But I'll call the case anyway. Jessica McGlothin v. State Farm. Mr. Banahan. Thank you, Judge Southwood. May it please the Court, John Banahan on behalf of State Farm Mutual Automobile Insurance Company. We're here today seeking a ruling from this Court on a pure issue of law. There are many facts here that are completely agreed to, stipulated to. Ms. McGlothin is entitled to her policy as indicated by the District Judge. We're not contesting that. Her policy would be paid. If, on the other hand, the District Court's decision, as we submit, conflicts with several state statutes and decisions, it should be reversed. Preliminarily, Mississippi Code 8311-101 is the general statute that provides an insured in the state of Mississippi the right to have a policy that provides uninsured motorist coverage. 8311-103 The whole purpose of uninsured motorist is when I get hit by somebody who is negligent and lacks insurance, then I should be able to get some coverage for that. How does your construction of these statutes fit with that? Because there's no argument here that the person was negligent. It's just a whole recklessness and whatever didn't meet that standard. There's no argument about who caused the accident, in other words. And so how does your argument even fit with the general notion of uninsured motorist coverage? We have a line of cases that go back decades, literally, that require that that language that I just read to you from 8311-101 be enforced, and that is there has to be a legal entitlement to recovery. You can't just show up, I've got an uninsured motorist case because I was hit by an uninsured motorist. For example, the statute of limitations applies, comparative negligence applies, and statutory immunity applies to those claims. Those cases that are cited in our briefs that go back to the Aiken case on interspousal immunity and beyond, those cases all deal with someone who wound up with no remedy, in essence, because they were not legally entitled to recover under the statute. That's no different from the situation that we are presented with here, that the district court was presented with here. And I can tell you that, and Judge Barksdale, I hope our Rule 28 letter was not rejected. I didn't receive notice of it. But we submitted a letter as well. I took pause when I heard the comment earlier. Well, one thing about your letter, Mr. Banahan, it was not rejected. But the basic point, two points, one is it's for new authorities, not newly discovered authorities, and secondly, it's not for a new brief. And so it's one thing to say we believe relevant for issue number two is this case decided since our earlier briefing. That's it. And you basically filed a supplemental brief dealing with older cases. It was not rejected. With my apologies to the court, I can assure you I would prefer that our brief address that Rainer case from the Supreme Court. I'll say on the front end before and maybe preempting a question, but that is not a cited opinion. They didn't issue an opinion for us to rely on or catch, and it made it very difficult. Had I not been talking to an attorney last week. I was thinking that. You were sitting at the bar with some lawyer starting to talk about the Rainer case, and that's how you found out. That worries me about treating that as precedential because we may not all go to the same bar. And what if somebody is from a different town? They don't hang out at that bar. They can't do research in this era of technology and Internet, and we know everything about the entire universe, but we can only find this case if we sit at the bar with the guy that handled it? It was actually a conference room, but it could have been a bar. It could have been anywhere. The fact of the matter is there was no way for me, there was no way for Mr. Bishop to discover that case. How can we treat that as precedential? I think you look at the line of cases that talk about what should the district court have done, what should this court try to do to discern what the state law is under the statutes of the state and the decisions of state courts. In this case, we thought when we were performing the briefing here, completing the briefing, that the Williams case from Lafayette County was the only state court opinion, and I understand it has limited value. It has value only as persuasive authority at most because it's not from an appellate court, it's not from the Court of Appeals or the Mississippi Supreme Court. However, this Rainer case, similarly from Rankin County, we have two state court circuit judges now that we know have interpreted these statutes by what we believe to be their clear meaning, and have also, in one instance, one of those cases went to the Mississippi Supreme Court. It was a per curiam decision. It was 9-0, and they issued no opinion. But the only issue before them is the identical issue that we have in this case. How do we know that? How do we know the briefing didn't raise some other point? The only issue in looking at the per curiam opinion, we know that it's the same case. There's not any doubt about that because of the cause number. No, no, no. I'm talking about we, as you may have observed at the arguments before, we have had the circumstance where the district court has ruled on X, and then on appeal the parties bring up Y. They might bring up a jurisdictional issue. They might bring up something. They can say there's an alternate ground to affirm. You don't need to reach this thorny, you know, uninsured motorist question because blah, blah, blah. And then they go, okay, affirm. How do we know that didn't happen? Is that not something the Mississippi Supreme Court, I mean, my colleagues here would know more about that, but is that not something the Mississippi Supreme Court does? The only thing I can go from, Judge Haynes, is the final judgment of dismissal in that Rayner case, which essentially just sets out there's no legal liability on the part of the deputy, therefore there's no uninsured motorist claim. That's the only issue that was addressed by the court. But we don't have the briefing, no. I do not have the briefing. Counsel, a couple of things I would point out. One is there's a rule of procedure, as you may know, by the Supreme Court that says there are unpublished opinions are not precedent. And secondly, the opinion is actually from before the amendment. It's a 2008 event, and it would make, I would imagine that the Mississippi Court would have been interpreting the 2008 statute and not the 2009 statute. So I wouldn't spend a lot of time on your Rankin County case. Your Honor, if I could, I'd like to go back to what we actually briefed, which was before that came to our attention, and that is the district court here based its opinion on two things, really. One was the district court felt that there was some, or at least from Judge Grola's standpoint, there was a perceived repugnancy between 101 and 103, the two statutes. That's first and foremost. The rule of repugnancy in Mississippi is defined in our briefs, but unless the court can find, and I think the terminology on it is a clear repugnancy, that the two should be read in harmony with each other. Read them in harmony to us. Give us a situation where they would work hand in glove. Your Honor, they would work in harmony, for example, if, and before the, let me back up a little bit, before the abrogation of spousal immunity in Mississippi in the Aiken case, they were read in harmony that 101 requires that you be legally entitled to recover. Is that an uninsured vehicle that you're in? Well, yes, it could be an uninsured vehicle you were in because your husband was driving and he was uninsured. However, because you're not legally entitled to recover from your husband, under that archaic theory of interspousal immunity, we have a line of cases where a spouse was denied the right to recover against their spouse. In the instance of workers' compensation, workers' compensation is an exclusive remedy if your co-employee is driving a vehicle and you're injured in that vehicle. In that instance, the act would indicate you're not entitled to legally recover from your co-employees. Therefore, there's no recovery under that act. The act itself provides that if someone is injured due to the negligence of a driver who cannot be identified, we refer to that as a phantom vehicle. I think that's used, that's the parlance in many states. But if a phantom vehicle causes the accident, you can't identify who that driver of that vehicle is. Nonetheless, you've had a terrible accident. You ran off the road, you hit a tree. Unless you have contact or you can identify that vehicle, you have no recovery. It's just hard and fast that you can't recover unless you're legally entitled under the language of section 101. Let me ask you this. Did you finish answering the question? Or are you trying to read it in harmony? Have you finished reading the whole thing in harmony? No, I think that you can read those two in harmony. The legislature, within its purview, decides what is an uninsured and what is not an uninsured vehicle in Mississippi. The policy issued here is in lockstep with that statute. And if the legislature wanted to intend otherwise and wanted to make it where the individual who's involved in police or fire activity doesn't have to be guilty of some sort of willful disregard in order for there to be liability against that individual, the legislature could have said that doesn't apply to the uninsured motorist act. But they didn't. They did not do that. So the uninsured motorist act still has that same language that we're dealing with, 8311101, that you have to be legally entitled to recover. I'm sorry to have interrupted. I guess you're finished. Go ahead. Okay. Yeah, I just have the question on Mason. If Mason had been found to have acted in reckless disregard, did Biloxi have insurance and would that insurance have covered that? Would we even be dealing with the UM issue? I believe that Biloxi does, and I believe Biloxi would have been responsible for that. Mr. Bishop did exactly what attorneys in our state do. They exhaust their claim against the tortfeasor, and if it turns out that that actor who was operating a fire truck or a police car or some law enforcement activity at the time is not acting with reckless disregard, they get a judgment on that or an order, usually by summary judgment, and then they pursue their uninsured motorist claim. Because I'm back to your rectification or reconciliation of 101 and 103 and all of that. Your argument is, well, you can be in an uninsured vehicle, and I'm talking about as a fire and police, not the interspouse or whatever because that's the specific issue we have here. You can be in an uninsured vehicle and still not be legally liable, and that makes a lot of sense, and I'm having trouble with that. I'm like, when will that really, truly happen? Because the example here, it was the vehicle really uninsured, or was it really the problem was that it's not legally entitled to recover because of the immunity, because of the lack of reckless disregard? The vehicle's uninsured by statute. By statute. It's covered under the Mississippi Tort Claims Act, I should say, and therefore it's uninsured. That's not an issue in our case. The only issue is, was Mr. Bishop's client legally entitled to recover? He has to have made the amendment they make if it's never going to help anybody because the legally uninsured motor vehicle is always going to have the guy that either acts in reckless disregard and the insurance will cover it or doesn't act in reckless disregard and nothing will apply. Why do we even make this amendment? I think that was Judge Girola's error here, and I have the utmost respect for Judge Girola, but I think he just got this wrong on that. In his opinion, he said specifically that the, if I could, I'll pull the language. Anyway, Judge Girola had the two points. The first point he made was there would be no instance, just like you said, Judge Haynes, where someone could recover in this situation, and that's incorrect. You can recover on your policy, and let me give you an instance for that. This may not answer your question. I apologize if it doesn't. If I have a million dollars in coverage, I have a personal liability umbrella policy, it provides that much uninsured motorist coverage. If I'm in a catastrophic accident, if the city of Biloxi's fireman or policeman is the one who caused it and he or she was guilty of reckless disregard, the city of Biloxi is on the hook for $500,000. That's the cap. If the insurance, my insurance carrier has an offset provision in its policy that would allow the offset, I would at least be entitled to half a million dollars if my damages warranted that claim. I'm sure the statutory, I didn't observe this, but the statutory U.M. doesn't have a, I'm sure it's a small number. Well, the minimum required is $25,000. Right. So we wouldn't have anything up to your liability limit. Yeah, but once you're dealing with that, the non-statutory U.M., aren't you then dealing with the language of the policy where you could agree to whatever you wanted to there? I mean, the statute doesn't prevent State Farm from providing greater coverage for uninsured motorists than the minimum requirement, the million dollars. You could make it where the person isn't legally entitled to recover. They were just the cause of the accident. I mean, all of that. We're dealing with, the only reason we're looking at a statute is because this was the statutory minimum U.M. coverage, right? Well, we're looking at the statute because these two statutes are the two that were applied by Judge Girola. But the statute doesn't prevent an insurance company from giving more coverage. It just prevents an insurance company from giving less coverage. That's my point. Well, we don't normally have to look at statutes to interpret policies. It's only when there's some sort of requirement, and that's what we have here? Or am I missing something? No, you're not. Judge Haynes, I was going to say that the statute requires that if you issue a liability policy, like that umbrella we talked about for a million, you have to give the insured the opportunity to purchase that much uninsured money. Right. That's what the statute provides. And that's the coverage we have here. The coverage we have here is minimal coverage, the $25,000, because that's what the insured elected in this particular case. And that is their coverage if Judge Girola is correct. We submit he was not correct, and that should not be paid to the ---- Mr. Banhan, your time is up, but I do have a question that I wanted to ask. Before 2009 with this amendment, how would this same situation have worked? You're saying that there is an opportunity because this kind of vehicle, a motor vehicle owned and operated by a person protected by immunity under the Tort Claims Act, that was added as a definition to what can be an uninsured motor vehicle. Would that not have been the law beforehand? Would the same issues regarding whether the governmental driver was reckless or not would not have led to coverage or not coverage? The amendment to 103 did change the law, but it ---- Say again, it did change the law? It did change the law, and it specifically defined a vehicle covered under the Mississippi Tort Claims Act. Right, but how did it change from what the law was before? What would the law before have done in the situation where you say there's now coverage? I was trying to flip to the case for you. There's a case that we cited in the briefs. It's a nationwide case. It appeared to me that the Court was greatly confused by not only the trial court but the circuit court. Courts get confused in their opinion? Anyway, keep going. Not this Court. That's all right. Not this Court. But I think it was confusing to the Court because in that case there was a cap of $500,000 for the tort claim. Now, this was before 2009. I believe that is, Your Honor. I'll check it before I get back up. But before that, there were problems determining how you apply offset. How could you have the situation I just described with Judge Haynes if that vehicle that's covered under the Mississippi Tort Claims Act isn't treated as an uninsured motor vehicle? There are many instances where if someone is performing a discretionary function, whether they're working for the State College Board on down to the Department of Transportation or whomever, where you can have recovery, you do recover under the Uninsured Motorist Act without any concern about reckless disregard because it doesn't involve fire or police protection. All right, sir. Thank you. Good morning, Your Honors. May it please the Court. My name is Scott Bishop. I represent the appellee in this matter, Ms. Jessica McLaughlin. Four days ago, State Farm provided a case to this Court in which they claimed was, quote, the best evidence of Mississippi's interpretation. Before you begin your argument, I have a couple of questions for you. Yes, sir. As I understand it, your original action that was removed to federal court, you had some Mississippi defendants, and since they were residents of Mississippi, the action couldn't have been removed, but you didn't serve them. Is that correct? Is that why it was able to go into federal court? That's correct, Your Honor. So you're not, so you feel we do have jurisdiction. Of course, the parties don't determine whether we have it, but I notice it hasn't been raised. I do, Your Honor. All right. And that's because they were never served. Correct. All right. Second question. How did you exhaust your administrative remedies? We actually, when we filed the lawsuit in, well, backing up for a moment, we did first of all file the Notice of Claim Act, the Mississippi Notice of Claim letter on the entity, the Biloxi Fire Department. We also filed the lawsuit in the state of Mississippi in state court. When we filed it in state court, the trial court judge there determined that they were entitled to statutory immunity, and therefore, at that point, those administrative remedies were exhausted. All right. Where is there an explanation of what those remedies are? So we can tell whether, in fact, they were exhausted or not. Well, Your Honor, I think even State Farms Council admitted that they had been exhausted. That was never raised by them. Even Mr. Banahan? Yes, sir. Yes, sir. I haven't seen a challenge, but that issue is there that you have to exhaust administrative remedies, and I haven't seen any explanation of what that means. You can proceed. Thank you, Your Honor. Dealing with the Rainer case that State Farm has provided to the court four days ago, it attempts to create a loophole where there is none, and I know that Your Honors went over this case a moment ago, but I wanted to briefly go over that as well. First of all, the Rainer case— Well, you have a former member of the Mississippi Court of Appeals saying it's not presidential and it's pre the amendment that we're addressing. What more can you add to that? Well, that was exactly my point. The only thing I did want to clarify was that Mr. Banahan mentioned that it was a Mississippi Supreme Court. The Supreme Court action actually had nothing to do with the statute as we're discussing it today. The Supreme Court action was strictly based upon the reckless disregard portion of the immunity clause. Well, we don't even really know what it was based on. Well, we have a—this is the Mississippi Supreme Court. Right. It just says affirmed, and we don't know what they were thinking because they didn't tell us. Correct, correct. I know Mississippi has a way of they take things from the Court of Appeals, and there's a little bit of procedural issues that I'm not that knowledgeable about that may affect my questioning on that, but I will defer to my colleagues from Mississippi on those details. Well, Mr. Bishop, you seem to be saying that you find some guidance from what the Supreme Court did on what issue they addressed. Is that what you're indicating? No, sir, the opposite, actually. Okay. What I'm saying is— I think you're right, but you agree there's just a one-word affirmance. We don't have any kind of explanation to it. I believe that there was a published Supreme Court opinion. I wonder if we're talking about the same case. No, you're talking about the one that had to do with the people. Exactly, and that's the— But the opinion of the—I was confused about that, too, because they cite that case. Correct. And they don't make it clear that that's a case involving different defendants from the same case. When you read that case, that's only dealing with the reckless disregard. But then when you look at the appeal, which was a separate numbered appeal of the finding as to the uninsured motorist, there's just this—just what they sent us, which we couldn't find online, that just says affirm. Correct. I couldn't find—I looked for briefing and couldn't find any briefing. It's not to say it's not there. I just couldn't find it. And same here, Your Honor. In fact, it's not even on the Mississippi Electronic Courts. We couldn't even find it on that. But the issue is, like you said, that it was from a 2009 case. Now, 2009, true, the amendment of Mississippi Code 8311103 went through in 2009, but this stems from a car accident from 2006. Therefore, they're applying pre-amendment law, as Judge Shalik mentioned. The other issue I wanted to get into is— What do you do in response to his last—your—Mr. O'Banahan's last point, which is, look, there's a lot of ways in which 103 and 101 would come up. It's just not police and fire. Police and fire is the area where, you know, hard stop, unless there's reckless disregard, you're just out of luck. But we could have other kinds of Mississippi tort claims people that, in fact, would yield uninsured motorist coverage. What's your response to that? Well, Your Honor, quite simply, if they're not entitled to immunity, such as the police and fire protection, then we don't need uninsured motorists. We have liability coverage at that point. So why else— That was my earlier question. Is that always true, or are there cities where they just don't insure? That's the only—I've never heard of a city that doesn't insure. And that's entirely the point why the Mississippi legislature went ahead and added this amendment to 83-11-103. But then why didn't they also go up and fix 101? Was it a mistake? I'm not aware of any fix that they made to 101. That's what I'm saying. Why didn't they? In other words, why are we having this question? Sure. Well, I think I can explain that. Okay. I think here we've got the—you're referring to the legally entitled to recover language, which seems to be the magic language here. Perkins v. The Insurance Company of North America, which was cited in the appellant's brief, mentions that the statutory language of the legally entitled recover speaks to the fault of the owner-operator, not to the derivative liability of the insurance carrier. This goes back to what Mr. Banahan said in the fact that State Farm is allowed to step in and argue comparative fault, statute limitations, causation, and whatnot. However, they're not allowed to be able to make that as a coverage defense, saying that 83-11-103 would not apply. That's based upon this Perkins case. They also mention that in their argument that they cite this Coleman case, and the Coleman case says that an insurance carrier has available to it all substantive defenses of the uninsured motorist, which sounds good for them. However, Coleman cites the Meadors case, and Meadors seems to be the genesis of this entire argument. Meadors was a 1993 case, I believe. Yes, 1993 Mississippi Supreme Court case, which was cited as well by the appellants in their brief. Meadors' point is that there was no statutory mandate. Now there is a statutory mandate. 83-11-103, by that amendment in 2009, created a statutory mandate. Before 2009 enactment, I don't doubt that the Rainer case probably was right, and it probably was properly decided at the time. However, the legislature saw what the issue was, came in and what they believe, although granted maybe their wording wasn't as spot on as it should have been, but to fix this issue. And now by doing that and passing this amendment to 83-11-103, including those entitled to immunity under the Mississippi Tort Claims Act, it now encompasses them as being uninsured motorists in 83-11-101. Judge Gargiulo saw that. Judge Gargiulo saw... Judge Gargiulo found a dissonance between the two, not an agreement between the two, and so that's the kind of last resort for judges, is to find that the legislature kind of has this dissonance between two sections and trying to rectify it. We really try to read them all in harmony. So why doesn't Mr. Vanahan's construction of the statutes read them in harmony? Legal entitled means what it says, legally entitled, and you can have these uninsured vehicles that in fact end up yielding coverage. But it would, and it would. But by the passing of the 2009 amendment, that created an exception. So there is where everything comes in. 83-11-103 listed out the instances, and then when the 2009 amendment came through, adding those entitled to Mississippi Tort Claims Act immunity as considered an uninsured motorist, by doing that, that is what created the exception. That's the entire point of Judge Gargiulo's argument. Yeah, but I'm saying we only... He had to conclude that you can't rectify or reconcile 101 and 103 to get there, to get where he got. And I'm saying we can do that, but that's a last resort. Why is Mr. Vanahan's approach not a way to reconcile the two that doesn't say, well, we're going to ignore legally entitled? Well, first of all, candidly, Judge Haynes, I didn't actually hear of a way that they could be read in harmony. The only way I heard that it could be read in harmony was if there is more than a... Someone has a million-dollar umbrella, and if the injury was catastrophic and whatnot, but the problem with that is that there's no way... We can't believe that the UM Act, the legislature, intended to pass a law considering, in this very courtroom, the Boatner case, Boatner v. Preferred Risk Mutual, Incorporated v. Pool, said that the entire purpose of the UM Act is to maximize the remedial and humanitarian coverage that is provided. We can't... Well, counsel, regardless of what we say, it is clear that under then-existing law, there's a significant number of situations when, in fact, there was not uninsured motorist coverage, when a party was not legally entitled to recover. So it's one thing for us to make some sort of broad statement. It's something else for us to deal with the actual language of the statute. And so just to say it needs to be as broad as possible isn't going to get us to where we need to be. It needs to be as broad, maybe, as permissible under the language of the statutes that we're dealing with. So it still comes down to Judge Girola, I think is how he says his name, that... Oh, you can call him Lew if you want to, but Judge Girola indicated he didn't think these two sections could be read together. And if we find that they can, then I don't think any motivation to make U.M. coverage as broad as possible is going to prevent us from doing that. And I understand, Your Honor. However, my point here being that the entire purpose of the passing of this amendment was to include these as uninsured motorists. There's no amendment regarding workers' compensation as Mr. Vanhan spoke about earlier. Completely agree. That is considered and that's still fine. You're not legally entitled to recover. However, the legislator went and imagined this exact scenario and so doing, that's the reason they passed this amendment. Work through this hypothetical for me. Do you agree that the driver of a vehicle can be operating within the course and scope of his employment but still be reckless? I do. Such as driving a fire truck and headed to a fire but unfortunately runs a red light because he was looking at his cell phone. So he's within the course and scope, but he's reckless when he runs through that red light because he's taking his eye off the road. Under that scenario, don't these two statutes work together? Wouldn't there be liability as to one, maybe the driver, but not to the city that owns the fire truck or vice versa? Work through that with me. Again, Your Honor, the point here is that if that's the situation and they're not entitled to statutory immunity, then we don't need uninsured motorists. We have liability coverage. That's the whole point. When you say we, you mean the city of Biloxi or the fire department will have it? I'm sorry? That's where it's coming from, isn't it? It's the city of Biloxi or the fire department that needs to have the insurance. Correct. And it's one thing for the legislature to say, I bet all the municipalities have the insurance. It's something else to be certain of it, and this at least allows in a situation and similar ones to what Judge Barksdale mentioned, that if the city doesn't have, and there are a lot of very poor cities in the state of Mississippi and other governmental bodies would be protected under the Tort Claims Act immunity, that this provides a backup to that the state forums of the world will have to pick up a tab if the city doesn't have insurance. Well, two things. First of all, I'm not aware of any municipalities that don't have insurance. Have you searched that? Maybe there are some. I don't know. Really, what are you basing that on? Other than you just haven't heard of any? I haven't heard of any, and I do this pretty much every day, and so I haven't had the situation or occasion where I've run into it. Now, I'm not saying there isn't any. Of course, it's not just cities. We're talking about fire departments, anything else that is a separate entity covered by governmental immunity, that each of those, if any of those didn't have insurance, this would pick up the tab in a scenario such as Judge Barksdale mentioned. But then they wouldn't need the uninsured motorists, though. You'd have the, I mean, if . . . If they didn't have insurance coverage. Correct. In other words, the answer to your question, Judge Southwick, is that if these particular entities did not have insurance, then, yes, I understand what you're saying to a point. However, bear in mind, number one, that you could still pursue a claim against the city or state or whatever the case may be. And also, the other issue here is that that particular instance, that is exactly the reason why you have uninsured motorists. Back to what Judge Haynes said earlier, it's almost like a common sense in the fact that we, as citizens of the state, pay for uninsured motorists and we are for situations in which we are struck by somebody who does not have insurance or if there is some sort of a issue. When we look at someone that perhaps their insurance company, or their insurance policy has lapsed or an instance where their insurance company is insolvent or all of these factor in. Now, granted, they're all different situations, and I agree with that, but it's still, from a common sense perspective, that's the reason we have it. Is there any statute that requires municipalities to have insurance coverage? I'm not aware of that, Your Honor. I can look that up and let you know. Well, how about answering my hypothetical? Okay. Acting with him, course and scope, but he's reckless, and that causes the accident. What happens? Reading both of these statutes, what would happen about uninsured motorist coverage? Are you asking if that particular entity had insurance? I mean, are we assuming... Would either the city or the driver have some sort of liability? The city would. Right. Right. Because of the recklessness factors in. Right. So why are they repugnant? Well, because the amendment created the exception, and that's what we keep going back to, and I know that, but at the end of the day, that's the reason why this entire statute was passed or this entire amendment was passed, to create that exception that didn't exist before. Are they repugnant? Are you just saying it's unnecessary? Well... Because all these entities will have insurance. Isn't that really your point? It's not the repugnancy? It's irrelevant? Repugnancy was Judge Gargiulo's. Well, no, no, no. I understand that, but you're hanging your hat on it, and it seems to me they're not so much repugnant, in your view, as there's no purpose, which is sort of a different statutory construction point, I guess, that if that's what it means, there was no reason for it. But it seems to me that's really your point, not that they're repugnant. Repugnant would not necessarily be my word that I would have used, but, again, I defer to Judge Gargiulo here. What word would you use? I would say the statutes are confusing. I mean, I don't really necessarily know. I know that's not a very good term of art, but... But you would agree that our duty is to harmonize as best we can. If we can't, if you have a statute A says X and statute B says not X, you just can't reconcile those two, then we have to go to all the other things about legislative history and I don't know what. But if we can harmonize it, if there's some way to read it logically together, we've got to do that, right? I would agree with that, but at the same time... And the district judge didn't think we could, so that's why he went on the repugnancy track. Well, and I don't know what his thinking... And I called dissonance and you're calling confusion. Right, right. I think at the end of the day, though, what we have to look at is the bedrock of UN, Mississippi UN law, is liberal construing in favor of coverage. And I think that's what we have to look at at the end of the day. So if there is some sort of ambiguity or if there is some way that we can't read those two statutes together, then case law has said we need to err on the side of coverage. And even if... To take that a step further, I believe there... I'll look at the case real quick. Okay. Again, the Boatner case that was decided in this courtroom in 1997 says that Mississippi's UN provision should be interpreted from the standpoint of the injured insured. In this particular instance, this is the reason why Ms. McLaughlin has the uninsured modus coverage. This is why anyone would have the uninsured modus coverage to be taken care of in a situation in which they get hit by someone who doesn't have insurance or, thanks to the amendment, someone who is statutory immune. Your Honor, any other questions? Yes, that's it, Mr. Bishop. Thank you. Thank you, Your Honor. To get back to where I was fumbling around and looking for Judge Girola's language of his opinion earlier, in applying the rule of repugnancy, he said an insured vehicle would never... An insured, rather, would never be legally entitled to recover damages from a person or entity entitled to immunity under the Mississippi Tort Claims Act. Looking at the two statutes, that was just incorrect. And he's a great judge, but he just wasn't right that day on that particular point. And we've talked about that a moment ago. There are multiple instances where someone would be entitled to recover damages with a person who was covered under the Mississippi Tort Claims Act. If they're performing... We know that if they're performing discretionary duties and they are negligent, simply negligent, you can recover. If you can recover against them, then you have shown under the Uninsured Motorist Act 101 that you are legally entitled to recover. Therefore, you'd have an uninsured motorist claim that you could present. Boatner was mentioned a moment ago... Before you leave that, the statute on immunity says governmental entities are immune in events arising out of any act or omission of an employee of an entity engaged in the performance or execution of duties relating to police or fire unless the employee acted in reckless disregard. Getting back to Judge Barksdale's hypothetical, isn't that a situation also in which the governmental entity will be liable? Absolutely. The governmental entity would be liable and so would the uninsured motorist carrier, providing that the coverage was appropriate. I was wondering why you didn't use that example since it seems so close to what we're dealing with here, that if this driver had been reckless as opposed to a lesser degree of culpability, we'd be in this situation. Not only can, but the Mississippi Supreme Court has addressed that issue on a number of occasions and found that the police officer who doesn't slow down and go cautiously through the light or the fire truck that doesn't cautiously go through the light, whether they're looking at their cell phone or just being inattentive, it's not simple negligence when you know that you've got people on an interstate or a highway that you're crossing that you need to slow down, at least be somewhat cautious. And in those instances where someone is in a high-speed situation and they're just reckless, quite frankly, they throw care to the wind, the Mississippi Supreme Court has determined that you recover under these provisions of that code section. You can recover against the state actor. The immunity is waived to that extent. If the legislature wanted to do this, when they passed that amendment, they could have said, okay, we're going to define a vehicle covered under the Mississippi Torque Claims Act as an uninsured vehicle, but that legal liability language of 101 doesn't apply to that instance, and they didn't do that. They had that opportunity, they just didn't do that. Boatner also says that the court should not rewrite the UM Act to include situations not expressly provided for under the guise of liberal construction. And I understand the Uninsured Motors Act is to be liberally construed to protect the insured. However, it's not to be rewritten. And we know it was rewritten here because Judge Garola said these two statutes are repugnant, and so therefore 101, the legally entitled to recover language, doesn't apply here. Was this point made to him? Did you handle this in district court too, and was there an argument in front of Judge Garola? It was not. On the briefs, you all have everything that Judge Garola saw. Of course, this is de novo review, so I don't know how much that matters. But Judge Garola obviously didn't have the Rainer decision that I dropped on you all last week. For example, I think that he may have had a different look at this or a harder look. I guess what I'm asking, whether it's in the briefing or in oral advocacy, so it would be just in the briefing, was this point made to him that at least would kick in under the situations we've been talking about if the driver had been reckless rather than negligent, you would have liability? That was pointed out? Yeah, I think there's no doubt that the court was aware and was made aware that if someone was acting with reckless disregard, that was never an issue in this case because Mr. Bishop and I stipulated, I think, fairly early on there was no issue of reckless disregard in this case. Okay. If you don't have any other questions, I'll be— and if I haven't answered a question you've asked already, I'd be happy to try. All right, gentlemen. Thank you very much. That's it for the arguments of today. We are in recess until tomorrow morning.